| | |
|---|---|
| WILLIAM R. FLETCHER,<br>    Plaintiff,<br>v.<br>CHICAGO RAIL LINK, L.L.C., CSX<br>TRANSPORTATION, INC., CSX INTERMODAL,<br>INC. and CSX INTERMODAL TERMINALS, INC.,<br>    Defendants.<br>─────────────────────────────────<br>CHICAGO RAIL LINK, L.L.C., CSX<br>TRANSPORTATION, INC., CSX INTERMODAL, INC.<br>and CSX INTERMODAL TERMINALS, INC.,<br>    Third Party Plaintiffs,<br>v.<br><br>AUTOMASTERS TIRE AND SERVICE CENTER,<br>    Third Party Defendant. | No. 06 C 0842<br>Judge Kennelly<br>Magistrate Judge Levin |

**AUTOMASTERS TIRE & SERVICE CENTER RULE 50 MOTION FOR JUDGMENT
AS A MATTER OF LAW**

NOW COMES the Third Party Defendant, AUTOMASTERS TIRE AND SERVICE CENTER, ("AUTOMASTERS") by and through its attorneys, MAISEL & ASSOCIATES, and moves this Court pursuant to Rule 50 of the Federal Rules of Civil Procedure to enter judgment in its favor and against the Third Party Complaint of Third Party Plaintiff, CHICAGO RAIL LINK, LLC ("CRL") as a matter of law, and in support thereof, states as follows:

1. CRL, has filed a Third Party Complaint against AUTOMASTERS, in connection with injuries and damages allegedly suffered by plaintiff, WILLIAM FLETCHER, on April 7, 2005.

2. CRL makes allegations pertaining to prior services performed by AUTOMASTERS TIRE AND SERVICE CENTER on or about March 28, 2005, relative to the brake lines of the

CRL vehicle plaintiff was allegedly operating at the time of the occurrence of April 7, 2005.

3. The alleged negligence by AUTOMASTERS include that:

    a.    The vehicle was unreasonably dangerous due to defects and/or omissions in the inspection, service, repair, and/or maintenance at the time the equipment left the control of AUTOMASTERS;

    b.    The vehicle was not reasonably safe due to a problem or defect with the brake line and bleed brake system, which caused the brakes to fail;

    c.    The vehicle was unreasonably dangerous due to the absence due to the absence of adequate, if any, warnings to the intended users of the vehicle of the high degree of risk involved with the use of the brake system;

    d.    The vehicle was unreasonably dangerous in that it failed to permit intended users to safely use the brake system while operating the vehicle;

    e.    The vehicle was not in conformance with expressed or implied warranty of fitness for the particular purpose for which it was intended.

4. No allegations of a failure to warn or advise CRL on or about March 28, 2005, if a belief by AUTOMASTERS existed that tampering or vandalism had taken place on or about March 27,2 005, is contained anywhere on the Third Party Complaint, even under notice pleading.

## A.    **ABSENCE OF NEGLIGENCE**

5. Liability on a negligence basis cannot be predicated upon mere surprise, guess or conjecture as to the cause of the injury. Barham v. Knickrehm, 277 Ill.App.3d 1034, at 1039, 214 Ill.Dec.721, 661 N.E.2d, at 1170 (3rd Dist. 1996)

6. The allegations of an unreasonably dangerous condition are not applicable because this is not a strict liability action, and there is no evidence of AUTOMASTERS leaving the vehicle in an unreasonably dangerous condition. Hinojosa v. Automatic Elevator Co., 92 Ill.App.3d 351, 48 Ill.Dec.150, 416 N.E.2d 454 (1st Dist, 1980).

7. The reference to expressed or implied warranty of fitness for a particular purpose is not applicable because no sale was involved in the service performed by AUTOMASTERS on March 28, 2005, and there is no evidence that the brake system on the Suburban were not fit for the particular purpose for which they were intended when the vehicle left the possession of AUTOMASTERS on or about March 28, 2005. <u>Malawy v. Richards Manufacturing Co.</u>, 150 Ill.App.3d 549, 5559, 103 Ill.Dec.355, 501 N.E.2d 376 (5th Dist. 1986).

8. There is no competent evidence of a problem or defect with the brake line and bleed brake system which caused the brakes to fail being caused or left by AUTOMASTERS at the time the vehicle left its control on March 28, 2005.

9. There is no evidence of any degree of risk involved with the condition or use of the brake system when the vehicle left the possession of AUTOMASTERS on March 28, 2005, and the vehicle was under the possession and control of CRL from March 28, 2005, through April 5, 2005.

10. The only individuals analyzing and being familiar with repairs to the brake line system on the Suburban on or about March 28, 2005, were Steven Jurewicz and Michael Zaba, the service manager and a technician for AUTOMASTERS at the time. Both individuals were competent and experienced, and they expressed their opinions that the work they performed was proper and appropriate and that the vehicle's brake line system was in good working order at the time it left AUTOMASTERS.

11. CRL has the burden of proof to establish the elements of its case against AUTOMASTERS, it cannot rely on a claim that the jury may not believe AUTOMASTERS or speculate that something else possibly happened, to meet the burden.

Wojtowicz v. Cervantes, 284 Ill.App3d, 524, 219 Ill.Dec.849, 672 N.e.2d 357 (1st Dist., 1996); Henry v. Bridgestone/Firestone,Inc., 63 Fed.App.V 953, 2003 WL 2013051.

12. Most significantly, Third Party Plaintiff's own liability expert, Joseph Arruda, testified unequivocally that to a reasonable degree of certainty, all of the mechanical repair work by AUTOMASTERS on or about March 28, 2005, in connection with the brake line system of the Suburban in question were appropriate and within the standard of care for service facilities such as AUTOMASTERS. He testified that no defect in the brake system existed when the Suburban left AUTOMASTERS on March 28, 2005, and there was no condition to warn of.

13. This was based upon the factual description of the work performed and testing performed by AUTOMASTERS, as well as by the fact that the brake system of the vehicle in question operated properly without failure for some ten days, and a minimum of approximately 450 miles, until the time plaintiff alleged a sudden inexplicable total loss of all braking ability on the Suburban in question.

14. Joseph Arruda testified to an expert degree of certainty that this could not have happened in the absence of a prior noticing of a reduced braking ability, which plaintiff denied, and also absent the loosening of both brake lines to the master cylinder.

15. He further testified that if the brake line or lines had not been appropriately tightened by AUTOMASTERS on or about March 28, 2005, the braking functions of the vehicle would not have existed beyond a test drive, much less for 10 days of continuous use, or 450 miles use or more.

16. Arruda further testified that one loose brake line should not have given a competent service technician or manager cause to believe there had been any tampering involved in

the brake line, nor under custom and practice does opinion require the repair facility to advise the customer orally or in writing they believe the brake line had been tampered with.

17. He further testified that from a mechanical standpoint, plaintiff's description of the braking capacity on the Suburban on March 27, 2005, gradually deteriorating during his use of the vehicle in his shift could only be consistent with one loose brake line, since there is no way the vehicle could have been operated for hours with two loose brake lines.

## B. NO DUTY REGARDING POSSIBLE BELIEFS BY AUTOMASTERS CAN PROPERLY BE APPLIED, AND IT IS NOT SUPPORTED BY THE FACTS

18. The testimony of Arruda concerning alleged custom and practice regarding reporting beliefs of tampering goes to the alleged standard of care as to whether there was negligence, but does not give rise to a legal duty. Rogers v. Clark Equipment Company, 318 Ill.App.1128, 253 Ill.Dec.82, 744 N.E.2d. 364 (2nd Dist. 2001), Darling v. Charleston Community Memorial Hospital, 33 Ill.2d. 326, 211 N.E.2d. 253 (1965).

19. Any legal duty under the circumstances would be vague, overly burdensome, incapable of being defined, and grossly unfair to a service facility such as AUTOMASTERS. This is not a circumstance where AUTOMASTERS had knowledge of prior instances of tampering at CHICAGO RAIL LINK; where AUTOMASTERS had any type of written or verbal indication that CHICAGO RAIL LINK may be involved; where there was obvious damage to any component of the brake line system that was suggestive of tampering, as opposed to some other cause; or where AUTOMASTERS could independently confirm that tampering had been involved on or about March 27, 2005.

20. The propriety of establishing a duty upon AUTOMASTERS, beyond of course exercising reasonable care in the work that they performed, is highlighted by Arruda's testimony to

the effect that under the circumstances he himself would not have suspected tampering, and he felt that in the normal course of events a reasonably competent repair facility should not, according to custom and practice, have been compelled to advise CHICAGO RAIL LINK in writing or orally, much less both, that they believed tampering was involved with the loosening of one of the brake lines.

21. Duties arise as a matter of law, and therefore any duty premised upon speculative analyses of the subject thought processes of a given technician or service manager, whether accurate or not, at a particular point in time would be so ill-defined that as a matter of law, no such duty should be found to exist and remaining issues, if any, of negligence or proximate causation should not be tendered to a jury.

22. To this day, neither Arruda nor anyone from AUTOMASTERS can confirm that there was in fact tampering involved with a brake line on the Suburban on March 27, 2005, and therefore to hold an entity to reporting tampering, or subjectively believed tampering, would be inappropriate.

23. Even more significantly, neither Steve Jurewicz nor Michael Zaba testified that they knew, nor even believed, that there had been tampering when they saw the vehicle on March 28, 2005. They had no details concerning what had transpired with the vehicle prior to their seeing it. They only knew that one brake line was loose, and not cut or otherwise clearly vandalized, and had no ability to assess the motivations of any individual who may have loosened said brake line, whether maliciously or ineptly for failed repairs, or otherwise.

24. To allow such an opinion by Joseph Arruda to give rise to a vague duty to allow this matter to go to the jury on the issues of negligence and proximate cause would further be

inappropriate under Federal Rule of Evidence 702, and <u>Kumho Tire Company, Ltd., v. Patrick Carmichael</u>, 526 U.S.137, 119 S.Ct.1167 (1999).

25. Excluding such testimony does not require questioning of Mr. Arruda's qualifications.

26. As in <u>Kumho Tire</u>, Arruda excludes certain scenarios concerning the performance of the braking system in question, such as stating that to have no braking whatsoever you would have to have two loose brake lines, or to have gradually reducing braking you could only have one loose brake line.  However, neither Arruda nor anyone else can reliably determine the cause of failure of the brake line on March 28, 2005, and therefore it would also be totally inappropriate to impose a duty upon AUTOMASTERS when they neither "believed" that tampering had been involved on March 27, 2005, and neither they nor Arruda have specific knowledge relative to how or why the brake line became loose on March 27, 2005.

27. There is no indication in the record that other experts in the industry use Arruda's particular approach or that they make the very fine distinction, speculative by its very nature that, to the effect that "if" the service manager from AUTOMASTERS believed there had been tampering on March 27, 2005, then it should have been passed on to CHICAGO RAIL LINK verbally or in writing, apparently without any supporting evidence of same and with the very reasonable likelihood that there never was such tampering involved.

WHEREFORE, for the foregoing reasons, Third Party Defendant, AUTOMASTERS TIRE AND SERVICE CENTER, prays for entry of an order pursuant to Rule 50 of the Federal Rules of Civil Procedure entering judgment as a matter of law in its favor and against CHICAGO

RAIL LINK, LLC, as to the Third Party Complaint of CHICAGO RAIL LINK, LLC, and for

such other relief that the Court deems appropriate.

MAISEL & ASSOCIATES


By: /s/ John W. Grove_____
    John W. Grove

MAISEL & ASSOCIATES
200 North LaSalle Street
Suite 2000
Chicago, IL  60601
Phone: (312) 917-1400